IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Waycross Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 CASE |
| | ) | NUMBER <u>15-50612</u> |
| DANA MEQUELLE STANFIELD | ) | |
| | ) | **FILED** |
| Debtor | ) | Lucinda B. Rauback, Clerk |
| _____ | ) | United States Bankruptcy Court |
| TITLEMAX OF GEORGIA INC. | ) | Augusta, Georgia |
| | ) | *By lcasalin at 11:22 am, Feb 18, 2016* |
| Creditor/Movant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANA MEQUELLE STANFIELD | ) | |
| Debtor | ) | |
| | ) | |
| and | ) | |
| | ) | |
| M. ELAINA MASSEY | ) | |
| Chapter 13 Trustee | ) | |
| | ) | |
| Respondents | ) | |

### <u>OPINION AND ORDER GRANTING MOTION FOR RELIEF FROM STAY</u>

This matter came on for hearing on the Motion for Relief from Automatic Stay under 11 U.S.C. § 362 ("Motion") by TitleMax of Georgia Inc., with opposition by Debtor Dana Mequelle Stanfield. TitleMax seeks permission to exercise its state-law rights and remedies against a 2006 Volkswagen New Beetle ("Vehicle") under a prepetition title pawn contract ("Contract").

AO 72A
(Rev. 8/82)

At the close of the hearing, I took the matter under advisement, requesting briefs on how Stanfield's bankruptcy filing affects the terms of the Contract and how Georgia's pawnshop laws intersect with the operation of the automatic stay. I now grant the Motion, holding that title vested postpetition in TitleMax and that the Vehicle is thus no longer property of the bankruptcy estate.

## FINDINGS OF FACT

I find the following facts based on the testimony at hearing, the written evidence, and the record in this case:

On August 3, 2015, Stanfield received a loan for $4018.00 from TitleMax, pledging as collateral the Vehicle's certificate of title and thereby granting TitleMax a security interest in the Vehicle. TitleMax disbursed the loan in three checks: one check for $18.00 to the county taxing authority for placement of the lien; one check to Stanfield, either for approximately $800.00 or for half the loan proceeds (testimony conflicted on the exact amount Stanfield received); and one check for the remaining amount to another title pawn company to pay off a previous loan Stanfield owed on the Vehicle.

Under the Contract, a total of $4419.40 (the original loan amount plus a finance charge of $401.40) was due to TitleMax 30 days later. At that point, Stanfield could redeem

the Vehicle by paying the full amount due or could extend the original transaction for 30 days upon the payment of a monthly pawn charge. If she did neither, she would be in default, at which point a 30-day grace period would begin to run. To redeem during the grace period, Stanfield would have to pay an additional $401.40 for a total of $4820.80. If she did not pay in full by the end of the grace period, ownership of the Vehicle would pass to TitleMax:

> If the motor vehicle is not redeemed within the grace period it shall be automatically forfeited to us [i.e., TitleMax] by operation of O.C.G.A. § 44-14-403, and any of your [i.e., Stanfield's] ownership interest in the motor vehicle shall automatically be extinguished.

(Contract, TitleMax Ex. B at 2.)

Stanfield filed her petition and a proposed chapter 13 plan ("Plan") on September 1, 2015, the day before the loan came due. As of that date, she had made no payments to TitleMax. As of the date of the hearing, she still had made no direct payments to TitleMax, although she had begun making payments under the as-yet-unconfirmed Plan. Stanfield proposes to pay TitleMax $95.00 per month on an estimated claim of $4500.00 at 7% interest over the three-year life of the Plan.[1] (ECF No. 2.) TitleMax's proof of claim, filed September 24, 2015, states that as of the date of the petition, TitleMax held

---

[1] TitleMax has objected to confirmation. (ECF No. 23.)

a secured claim for $4432.78 based on a statutory lien on the Vehicle. (Clm. No. 3.)

## CONCLUSIONS OF LAW

The filing of a bankruptcy petition creates an "estate" that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Here, at the time of filing, the Vehicle was property of the estate. See Moore v. Complete Cash Holdings, LLC (In re Moore), 448 B.R. 93, 100 (Bankr. N.D. Ga. 2011) (holding that at time of filing, when debtors had physical possession of the pledged vehicles and an unexpired right to redemption, the vehicles themselves were property of the estate).

The petition operates as an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Unless modified by court order or terminated by the debtor's failure to take certain actions that do not apply here, the stay of an act against property of the estate continues "until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). Although bankruptcy law defines property of the estate, state law determines the debtor's legal or equitable interest in the

property unless the Bankruptcy Code requires a different result. See Butner v. United States, 440 U.S. 48, 55 (1979).

Here, TitleMax argues that the stay does not apply, because the Vehicle is not property of the estate. Stanfield contends not only that the stay applies but also that she should be permitted to extend payments on the loan through the Plan. Stanfield is mistaken.

Under the Georgia Code, a pawnbroker takes a security interest in the property pledged on the loan. Ga. Code Ann. § 44-14-403(a). If the borrower fails to pay as agreed, whether to redeem the property or to extend the loan's maturity date, a grace period ensues. Ga. Code Ann. § 44-14-403(b)(1)-(2). On pawn transactions involving motor vehicle certificates of title, the grace period is 30 calendar days. Ga. Code Ann. § 44-14-403(b)(1). If the borrower fails to redeem the property during the grace period, the pawnbroker's rights accrue automatically by operation of law:

> Pledged goods not redeemed within the grace period shall be automatically forfeited to the pawnbroker by operation of this Code section, and any ownership interest of the pledgor or seller shall automatically be extinguished as regards the pledged item.

Ga. Code Ann. § 44-14-403(b)(3).

If the borrower files a bankruptcy case during the time the pledged property may still be redeemed, then the

Bankruptcy Code, 11 U.S.C. § 108(b), enlarges the statutory redemption period to 60 days, running from the date of filing.[2] Paul v. S. Ga. Title Pawn (In re Paul), 534 B.R. 430, 432 (Bankr. M.D. Ga. 2015); In re Thompson, No. 13-11235, 2014 WL 1330110, at *4 (Bankr. S.D. Ga. Mar. 31, 2014); In re Chastagner, 498 B.R. 376, 380 (Bankr. S.D. Ga. 2013); In re Bramlett, 483 B.R. 244, 246 (Bankr. N.D. Ala. 2012); Bolton v. Quick Cash Title Loans (In re Bolton), 466 B.R. 831, 839 (Bankr. S.D. Miss. 2012); Moore v. Complete Cash Holdings, LLC (In re Moore), 448 B.R. 93, 101 (Bankr. N.D. Ga. 2011); Prado v. Cash. Am. Advance, Inc. (In re Prado), 340 B.R. 574, 581 (Bankr. S.D. Tex. 2006); Oglesby v. Title Max (In re Oglesby), No. 01-4072, 2001 WL 34047880, at *3 (Bankr. S.D. Ga. Oct. 23, 2001).

Here, § 108(b) operated to extend the redemption period through November 2, 2015. When Stanfield failed to

---

[2]
> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b).

redeem the certificate of title by that date, ownership of the Vehicle transferred by operation of Georgia law to TitleMax. At that point, any legal or equitable interest that Stanfield possessed was extinguished, the Vehicle was no longer property of the estate,[3] and the automatic stay ceased to apply. See In re Moore, 448 B.R. at 102 (holding that when redemption period expired, pawned vehicles became property of pawnbroker and were no longer property of bankruptcy estate).

The automatic stay does not toll the running of the redemption period. In re Bramlett, 483 B.R. at 246; In re Bolton, 466 B.R. at 840; In re Prado, 340 B.R. at 581 (observing that only "a handful" of courts hold that § 362(a) tolls the redemption period); In re Oglesby, 2001 WL 34047880, at *3 (adopting "prevailing view" that the more specific provisions of § 108(b) control over § 362).

Once extinguished, a debtor's rights under a title pawn contract cannot be resurrected through the plan: "[A] Chapter 13 plan cannot be used to revive a debtor's right to

---

[3] By an amendment not applicable here, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, modified the concept of the bankruptcy estate to exclude pawned "tangible personal property" when certain conditions are met. See 11 U.S.C. § 541(b)(8). But "written or printed evidences of indebtedness or title" are excepted from the pledged property to which the exclusion applies. Id. Plainly, this provision does not apply to vehicle title pawns, because a vehicle certificate of title is evidence of title, Owensboro Nat'l Bank v. Jenkins, 328 S.E.2d 399, 402 (Ga. Ct. App. 1985). But see Paul v. S. Ga. Title Pawn (In re Paul), 534 B.R. 430, 434 (Bankr. M.D. Ga. 2015) (analyzing vehicle title pawn under § 541(b)(8)); Bolton v. Quick Cash Title Loans (In re Bolton), 466 B.R. 831, 838-39 (Bankr. S.D. Miss. 2012) (same).

redeem pawned property once the statutory redemption period has expired." In re Paul, 534 B.R. at 433 (citing cases). Neither can the plan be used to extend the redemption period:

> [T]o extend the redemption period by providing for repayment in a Chapter 13 plan would serve to impermissibly re-define state-created property rights by changing a title lender's non-recourse pawn transaction into a recourse loan . . . and by expanding a pawnor's property interest from a time-limited right of redemption to an indefinitely extended right of redemption.

In re Oglesby, 2001 WL 34047880, at *4 (holding that redemption amount could not be included in plan as "merely modify[ing]" pawnbroker's rights under 11 U.S.C. § 1322(b)(2)-(3)).

Accordingly, Stanfield may not keep the Vehicle and pay TitleMax through the Plan. Because its security interest has been automatically exchanged for fully vested ownership of the Vehicle, TitleMax no longer has a claim in this case. See In re Paul, 534 B.R. at 434 ("It is a fundamental principle of bankruptcy law that a creditor cannot hold a secured claim in the case unless its collateral is property of the estate.").

The Motion for Relief from Automatic Stay is therefore **ORDERED GRANTED**, permitting TitleMax of Georgia Inc. to pursue any and all its rights and remedies under nonbankruptcy law as to the Vehicle; and

**FURTHER ORDERED** that this Order is effective immediately and is not subject to any stay, including, without

8

limitation, the stay provided under Rule 4001 of the Federal Rules of Bankruptcy Procedure.

_____
JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 18 day of February, 2016.